BOTTINI & BOTTINI, INC.
Francis A. Bottini, Jr. (SBN 175783)
Albert Y. Chang (SBN 296065)
Yury A. Kolesnikov (SBN 271173)
7817 Ivanhoe Avenue, Suite 102
La Jolla, California 92037
Telephone:    (858) 914-2001
Facsimile:    (858) 914-2002
Email:        fbottini@bottinilaw.com
              achang@bottinilaw.com
              ykolesnikov@bottinilaw.com

*Attorneys for Plaintiff, Gary Hirt*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| GARY HIRT, individually and on behalf of himself and all others similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> YAHOO! INC., <br><br> Defendant. | Case No. _____ <br><br> COMPLAINT <br><br> <u>CLASS ACTION</u> <br><br> DEMAND FOR JURY TRIAL |

Plaintiff Gary Hirt ("Plaintiff"), individually and on behalf of all others similarly situated, files this complaint against defendant Yahoo! Inc. ("Yahoo" or the "Company") for, among other things, negligence, breach of contract, and violations of California's Unfair Competition Law and Customer Records Act. In support of these claims, Plaintiff alleges the following (1) upon personal knowledge with respect to the matters pertaining to himself; and (2) upon information and belief with respect to all other matters, based upon, *inter alia*, the investigations undertaken by his counsel. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth below after a reasonable opportunity for discovery.

## I.    NATURE OF THE ACTION

1.    This action is brought to seek redress for damages sustained by Plaintiff and other class members as a result of Yahoo's failure to safeguard the confidential, sensitive personal information of Plaintiff and other class members against unauthorized access and theft.

2.    An Internet-based Fortune 500 company headquartered in Sunnyvale, California, Yahoo provides search, communication, and entertainment services to hundreds of millions of Internet users worldwide. It is estimated that Yahoo's websites attract a billion visitors per month. In connection with providing its Internet-based services, Yahoo collects and stores massive amounts of confidential, sensitive personal information with regard to its users, including their names, email addresses, telephone numbers, birth dates, gender, ZIP codes, occupations, industries, and personal interests.

3.    On September 22, 2016 — less than two months after Verizon Communications Inc. ("Verizon") announced its plan to acquire Yahoo for $4.8 billion — Yahoo issued a press release, announcing that, in 2014, the confidential, sensitive personal information of approximately 500 million Yahoo users — including names, email addresses, telephone numbers, birth dates, passwords, and security questions

Class Action Complaint
Demand for Jury Trial

(referred to as "Personal Information" or "PI") — was stolen by online hackers:[1]

> A recent investigation by Yahoo has confirmed that a copy of *certain user account information was stolen from the company's network in late 2014* by what it believes is a state-sponsored actor. The account information may have included *names, email addresses, telephone numbers, dates of birth, hashed passwords* (the vast majority with bcrypt) and, in some cases, encrypted or unencrypted *security questions and answers*. The ongoing investigation suggests that stolen information did not include unprotected passwords, payment card data, or bank account information; payment card data and bank account information are not stored in the system that the investigation has found to be affected. Based on the ongoing investigation, Yahoo believes that *information associated with at least 500 million user accounts was stolen* and the investigation has found no evidence that the state-sponsored actor is currently in Yahoo's network.[2]

4.      In this September 22, 2016 press release, Yahoo failed to disclose when it discovered the data breach. The next day, on September 23, 2016, the *Financial Times* reported that Yahoo's Chief Executive Officer ("CEO") and director, Marissa A. Mayer had known about the data breach since at least July — around the time when the Verizon acquisition was announced.[3] On the same day, Verizon stated that it was first notified of Yahoo's 2014 data breach just two days before, on September 20, 2016.

5.      Yahoo's delayed disclosure of the 2014 data breach reveals (a) for two years, Yahoo failed to securely store its users' confidential, sensitive personal information; and (b) Yahoo failed to timely notify its users of the 2014 data breach.

6.      Plaintiff brings this action on behalf of all other similarly-situated Yahoo users to recover damages, restitution, and declaratory and injunctive relief.

---

[1] AN IMPORTANT MESSAGE ABOUT YAHOO USER SECURITY, Sept. 22, 2016, *available at* https://yahoo.tumblr.com/post/150781911849/an-importantmessage-about-yahoo-user-security (last visited Oct. 10, 2016).

[2] All emphases are added unless otherwise noted.

[3] Madhumita Murgia, Tim Bradshaw & David J. Lynch, *Marissa Mayer Knew of Yahoo Breach Probe in July*, FINANCIAL TIMES, Sept. 23, 2016, *available at* https://www.ft.com/content/d0d07444-81aa-11e6-bc52-0c7211ef3198 (last visited Oct. 10, 2016).

Class Action Complaint
Demand for Jury Trial

## II.    JURISDICTION AND VENUE

7.    This Court has jurisdiction over the action pursuant to 28 U.S.C. § 1332(d), because (a) at least one class member is of diverse citizenship from Yahoo; (b) each of the classes consists of more than 100 members; and (c) the aggregate amount in controversy exceeds $5,000,000.00, excluding interest and costs.

8.    Venue is proper in this district under 28 U.S.C. § 1391 because Yahoo engaged in substantial conduct relevant to Plaintiff's claims within this District and has caused harm to class members residing within this District.

## III.    INTRADISTRICT ASSIGNMENT

9.    A substantial part of the events or conduct giving rise to the claims in this action occurred in the County of Santa Clara. This action shall thus be assigned to the San Jose Division of this District.

## IV.    PARTIES

10.    Plaintiff Gary Hirt is a Yahoo user residing in California. Plaintiff provided confidential, sensitive personal information to Yahoo. Plaintiff is one of the Yahoo users whose personal information, according to Yahoo's September 22, 2016 announcement, was accessed, compromised, or stolen from Yahoo due to its failure to securely store such information. After learning of the data breach, Plaintiff incurred expenses to enroll in credit-monitoring programs in an effort to protect against and remedy the theft of his personal information from Yahoo. In addition to monetary damages, Plaintiff suffers from anxiety and distress as a direct result of Yahoo's misconduct. Plaintiff is a citizen of California.

11.    Defendant Yahoo! Inc. is a publicly-traded company incorporated under Delaware law and is registered to conduct business in California with the California Secretary of State. Founded in 1994 by two Stanford University students, Yahoo maintains its principal executive offices at 701 First Avenue, Sunnyvale, California. Yahoo is a citizen of California and Delaware.

Class Action Complaint
Demand for Jury Trial

## V.   FACTUAL ALLEGATIONS

**A.   Yahoo Collects Massive Personal Information from Users and Promises to Safeguard Such Information**

12.   A publicly-traded company with billions of dollars in market capitalization, Yahoo maintains Internet websites for searches, email, shopping, and news. According to its 2015 annual report to shareholders,[4] "Yahoo is focused on informing, connecting, and entertaining our users with our search (Yahoo Search), communications (including Yahoo Mail and Yahoo Messenger), and digital content products (including Tumblr), and [Yahoo's] 4 core verticals: Yahoo News, Yahoo Sports, Yahoo Finance, and Yahoo Life Style."

13.   With over a billion visitors to its websites every month, Yahoo has collected confidential, personal information from hundreds of millions of Internet users. For example, for each new user who signs up for an email account on Yahoo.com, Yahoo requires that the new user provide first and last names, date of birth, telephone number, and account name and password. Yahoo also asks new users to identify their gender and to provide alternative email addresses for "account recovery" purposes. In addition, Yahoo collects massive amounts of personal information regarding its users' transactions. According to Yahoo's own Privacy Policy:

> **Information Collection & Use**
>
> **General**
>
> Yahoo collects personal information when you register with Yahoo, when you use Yahoo products or services, when you visit Yahoo pages or the pages of certain Yahoo partners, and when you enter promotions or sweepstakes. Yahoo may combine information about you that we have with information we obtain from business partners or other companies.

---

[4]   YAHOO! 2015 ANNUAL REPORT, Feb. 16, 2016, *available at* http://files.shareholder.com/downloads/YHOO/2958064783x0x893458/96E76DB6-C10F-4514-AAB0-24BFC488B422/yahoo_ar15_annual_report.pdf (last visited Oct. 10, 2016).

*When you register we ask for information such as your name, email address, birth date, gender, ZIP code, occupation, industry, and personal interests. For some financial products and services we might also ask for your address, Social Security number, and information about your assets.* When you register with Yahoo and sign in to our services, you are not anonymous to us.

*Yahoo collects information about your transactions with us and with some of our business partners, including information about your use of financial products and services that we offer.*

*Yahoo analyzes and stores all communications content, including email content from incoming and outgoing email.*

*Yahoo automatically receives and records information from your computer and browser, including your IP address, Yahoo cookie information, software and hardware attributes, and the page you request.*

Yahoo uses information for the following general purposes: *to customize the advertising and content you see, fulfill your requests for products and services, improve our services, contact you, conduct research, and provide anonymous reporting for internal and external clients.*

14. In its Privacy Policy, Yahoo promises users that it takes their privacy "seriously" and implements systems and procedures to safeguard users' personal information:

**Confidentiality & Security**

*We limit access to personal information about you* to employees who we believe reasonably need to come into contact with that information to provide products or services to you or in order to do their jobs.

*We have physical, electronic, and procedural safeguards that comply with federal regulations to protect personal information about you.*

**B.  Yahoo Has Repeatedly Failed to Protect Users' Personal Information from Theft by Hackers**

15. According to a September 28, 2016 article from the *New York Times*,[5]

---

[5] Nicole Perlroth & Vindu Goel, *Defending Against Hackers Took a Back Seat at Yahoo, Insiders Say*, N.Y. TIMES, Sept. 28, 2016, *available at* http://www.nytimes.com/2016/09/29/technology/yahoo-data-breach-hacking.html (last visited Oct. 10, 2016).

5

Class Action Complaint
Demand for Jury Trial

"Yahoo's computer systems and customer email accounts were penetrated by Chinese military hackers" in 2010.

16. Although the 2010 data breach also occurred at Google, Inc. ("Google") and a number of other technology companies, the responses from those companies to the data breach were substantially different from Yahoo's response. For example, Yahoo never publicly admitted that it had been hacked. In contrast, Google's response was public and swift. In fact, Google's co-founder publicly announced that he regarded the attack on Google's systems as "a personal affront" and responded by making security a top corporate priority. As a result, Google hired hundreds of security engineers with six-figure signing bonuses, invested hundreds of millions of dollars in security infrastructure and adopted a new internal motto, "Never Again," to signal that it would never again allow anyone — be they spies or criminals — to hack into Google customers' accounts.

17. By comparison, Yahoo was slower to invest in the kinds of defenses necessary to thwart sophisticated hackers, such as state actors, that are now considered standard in Silicon Valley. Instead of making security a top priority, Yahoo called its own security team "The Paranoids," allowed the team's requests to be overridden, and opted to focus on other competing priorities. All told, Yahoo's security efforts fell short, when compared with those of other technology companies.

**C.    On September 22, 2016, Yahoo Disclosed a Massive Data Breach by a State-Sponsored Actor That Took Place Two Years Before — in 2014**

18. On September 22, 2016, Yahoo informed its users that they were victims of a massive data breach, dating back to 2014.

19. In its September 22, 2016 press release,[6] Yahoo stated that "the account information may have included names, email addresses, telephone numbers, dates of birth, hashed passwords (the vast majority with bcrypt) and, in some cases,

---

[6] *See* Note 1, *supra*.

Class Action Complaint
Demand for Jury Trial

encrypted or unencrypted security questions and answers." Such types of information are highly valuable to perpetrators of identity theft.

20.    Yahoo further stated that a "state-sponsored actor" — an individual or entity acting on behalf of a foreign government — was believed to be behind the data breach. It is estimated that at least 500 million user accounts have been stolen.

21.    Yahoo's data breach has long-lasting, potentially devastating consequences to its users. In addition to compromising existing accounts, the stolen personal information can be used to open new financial accounts, incur charges, originate loans, and initiate other unauthorized activities in the names of class members. The personal information can also be used to harm Yahoo users through blackmail or harassment. In sum, Plaintiff and class members are at risk for identity theft, potentially for the remainder of their lives.

22.    As reported in a study conducted by the President's Identity Theft Task Force in April 2007, headed by the Attorney General of the United States and the Chairman of the Federal Trade Commission, massive data breaches, such as the one announced by Yahoo, are costly to users both financially and emotionally:[7]

> In addition to the losses that result when identity thieves fraudulently open accounts or misuse existing accounts, … individual victims often suffer indirect financial costs, including the costs incurred in both civil litigation initiated by creditors and in overcoming the many obstacles they face in obtaining or retaining credit. Victims of nonfinancial identity theft, for example, health-related or criminal record fraud, face other types of harm and frustration.
>
> *In addition to out-of-pocket expenses that can reach thousands of dollars for the victims of new account identity theft, and the emotional toll identity theft can take, some victims have to spend what can be a considerable amount of time to repair the damage caused by the identity thieves.* Victims of new account identity theft, for example, must correct fraudulent information in their credit reports and

---

[7] The President's Identity Theft Task Force, *Combating Identity Theft: A Strategic Plan*, at 11 (April 2007), *available at* https://www.ftc.gov/sites/default/files/documents/reports/combating-identity-theft-strategic-plan/strategicplan.pdf (last visited Oct. 10, 2016).

Class Action Complaint
Demand for Jury Trial

monitor their reports for future inaccuracies, close existing bank accounts and open new ones, and dispute charges with individual creditors.

23.     In the immediate aftermath of Yahoo's belated disclosure of its data breach, Plaintiff and other class members incurred out-of-pocket expenses to enroll in credit-monitoring and other programs in their remedial efforts to protect against identity theft. Plaintiff and other class members are expected to be required to incur substantial additional expenses as a direct result of Yahoo's massive data breach.

24.     In addition to the massive scale, Yahoo's data breach is particularly egregious due to the two-year delay in discovery and disclosure. Indeed, six United States Senators — the Honorable Patrick Leahy (of Vermont), the Honorable Al Franken (of Minnesota), the Honorable Elizabeth Warren (of Massachusetts), the Honorable Richard Blumenthal (of Connecticut), the Honorable Ron Wyden (of Oregon), and the Honorable Edward J. Markey (of Massachusetts) — sent a letter to Mayer, Yahoo's CEO, on September 27, 2016, expressing outrage in Yahoo's delays:[8]

> *We are even more disturbed that user information was first compromised in 2014, yet the company only announced the breach last week.* That means millions of Americans' data may have been compromised *for two years. This is unacceptable.* This breach is the latest in a series of data breaches that have impacted the privacy of millions of American consumers in recent years, but it is by far the largest. Consumers put their trust in companies when they share personal and sensitive information with them, and they expect all possible steps be taken to protect that information.

## VI.   CLASS ACTION ALLEGATIONS

25.     Plaintiff brings this action as a class action under Rules 23 of the Federal Rules of Civil Procedure, on behalf of a proposed class (the "Class"), defined as:

> All persons in the United States who were or are Yahoo account holders and whose personal information was accessed, compromised, or stolen as a result of the data breach announced by Yahoo on September 22, 2016.

---

[8] *Available at* https://www.leahy.senate.gov/imo/media/doc/9-27-16%20Yahoo%20Breach%20Letter.pdf (last visited Oct. 10, 2016).

Class Action Complaint
Demand for Jury Trial

26.     Plaintiff also brings this lawsuit on behalf of a subclass ("Subclass" and, together with the Class, the "Classes"), defined as:

> All persons in the State of California who were or are Yahoo account holders and whose personal information was accessed, compromised, or stolen as a result of the data breach announced by Yahoo on September 22, 2016.

27.     Excluded from the Classes are Yahoo and any entities in which Yahoo or its subsidiaries or affiliates have a controlling interest, Yahoo's officers, agents and employees, the judicial officer to whom this action is assigned and any member of the Court's staff and immediate families, as well as claims for personal injury, wrongful death, and emotional distress.

28.     **Numerosity Under Rule 23(a)(1)**. The members of the Classes are so numerous that joinder of all members would be impracticable. Based on information and belief, Plaintiff alleges that the Classes include approximately 500 million persons.

29.     **Commonality and Predominance Under Rule 23(a)(2) and 23(b)(3)**. This action involves common questions of law or fact, which predominate over any questions affecting individual class members, including:

(a)     Whether Yahoo engaged in the wrongful conduct alleged herein by failing to, *inter alia*, develop and implement appropriate measures to ensure the security and confidentiality of the personal information of Plaintiff and other class members;

(b)     Whether Yahoo owed a legal duty to Plaintiff and the other class members to exercise due care in collecting, storing, and safeguarding their Personal Information;

(c)     Whether Yahoo negligently or recklessly breached legal duties owed to Plaintiff and the other class members to exercise due care in collecting, storing, and safeguarding their Personal Information and financial information;

Class Action Complaint
Demand for Jury Trial

(d)    Whether Yahoo breached its express and implied contracts with Plaintiff and other class members;

(e)    Whether Yahoo's conduct violated California Business & Professions Code § 17200, *et seq*.;

(f)    Whether Yahoo's conduct violated California Civil Code § 1798.80, *et seq*.;

(g)    Whether Plaintiff and the other class members are entitled to actual, statutory, or other forms of damages, and other monetary relief; and

(h)    Whether Plaintiff and the other class members are entitled to equitable relief, including injunctive relief and restitution.

30.    Yahoo engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff individually and on behalf of the other class members. Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quantity and quality, to the numerous questions that dominate this action.

31.    **Typicality Under Rule 23(a)(3)**. Plaintiff's claims are typical of the claims of the other class members because, among other things, (a) Plaintiff and the other class members provided personal information to Yahoo; (b) their personal information was accessed, compromised, or stolen from Yahoo due to its uniform misconduct described above. Plaintiff and other class members are advancing the same claims and based on the same legal theories. There are no defenses that are unique to Plaintiff.

32.    **Adequacy of Representation Under Rule 23(a)(4)**. Plaintiff is an adequate representative of the class because (a) his interests do not conflict with the interests of the other class members he seeks to represent; (b) he has retained counsel competent and experienced in complex class action litigation; (c) he will prosecute this action vigorously; and (d) he has no interests that are contrary to or in

Class Action Complaint
Demand for Jury Trial

conflict with the interests of other class members.

33.     **Superiority Under Rule 23(b)(3)**. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because joinder of all the members of the Classes is impracticable. Furthermore, the adjudication of this controversy through a class action will avoid the possibility of inconsistent and potentially conflicting adjudication of the asserted claims. There should be no difficulty in managing this action as a class action.

34.     Class certification is also appropriate under Rule 23(b)(2) because Yahoo has acted or has refused to act on grounds generally applicable to the Classes, so that corresponding declaratory relief is appropriate to the Classes as a whole.

35.     Because Yahoo is headquartered in California, and because all of Yahoo's key decisions and a substantial part of its operations emanate from California, California law applies to the claims asserted in this complaint.

## VII.   CAUSES OF ACTION

### Count I
### Negligence

36.     Plaintiff repeats and incorporates by reference each and every allegation set forth above, as though fully set forth herein.

37.     Yahoo owed a duty to Plaintiff and the other class members to exercise reasonable care in safeguarding their personal information in its possession. To fulfill this duty, Yahoo is obligated to implement and maintain adequate security measures to protect its users' personal information and to prevent and detect any breach of its system in an effective, timely manner.

38.     Yahoo also had a duty to timely disclose to Plaintiff and the other class members that their personal information had been or was reasonably believed to have been accessed, compromised, or stolen by unauthorized third parties. Timely disclosure is necessary to address any data breach and to take measures against further breaches.

Class Action Complaint
Demand for Jury Trial

39.   Yahoo breached its duties by:

(a)   failing to implement, and maintain adequate security measures to safeguard users' personal information;

(b)   allowing third parties to access and steal the personal information of Plaintiff and other class members;

(c)   failing to discover the data breach in a timely manner; and

(d)   failing to timely notify Plaintiff and other class members of the data breach.

40.   Yahoo's misconduct is inconsistent with industry regulations and standards.

41.   The unauthorized access to and theft of personal information of Yahoo users were reasonably foreseeable to Yahoo.

42.   Plaintiff and other class members did not contribute to Yahoo's data breach.

43.   As a direct and proximate result of Yahoo's misconduct, Plaintiff and other class members have suffered damages relating to, among other things, loss of privacy, emotional distress, and the time and expenses incurred for identity theft and credit monitoring.

## Count II
## Breach of Implied Contract

44.   Plaintiff repeats and incorporates by reference each and every allegation set forth above, as though fully set forth herein.

45.   To generate revenues, attract advertisers, and increase market share, Yahoo offered Plaintiff and other class members to use its Websites by creating Yahoo accounts, which require the provision of confidential, sensitive personal information.

46.   Accepting Yahoo's offer, Plaintiff and other class members obtained user accounts from Yahoo and provided Yahoo with confidential, sensitive personal

12

information.

47.    By becoming users of Yahoo's services, Plaintiff and other class members entered into implied contracts with Yahoo, under which Yahoo, for its own benefit, obtained from Plaintiff and other class members their confidential, sensitive personal information and, in exchange, agreed to safeguard such information against unauthorized access or use and to timely notify Plaintiff and other class members of any unauthorized access to or use of such information.

48.    Without such an agreement by Yahoo, Plaintiff and other class members would not have entrusted their personal information to Yahoo.

49.    Plaintiff and other class members fully performed their obligations under the implied contract with Yahoo.

50.    Yahoo breached the implied contracts it made with Plaintiff and other class members by, among other things:

(a)    failing to safeguard and protect the personal information of Plaintiff and other class members; and

(b)    failing to provide timely and accurate notice to Plaintiff and other class members regarding the data breach.

51.    As a direct and proximate result of Yahoo's breaches of the implied contracts, Plaintiff and other class members have actual losses and damages.

**Count III**
**Breach of Express Contract**

52.    Plaintiff repeats and incorporates by reference each and every allegation set forth above, as though fully set forth herein.

53.    Yahoo offered services to Plaintiff and other class members under the Yahoo Terms of Service[9] and Privacy Policy.[10]

---

[9] *Available at* https://policies.yahoo.com/us/en/yahoo/terms/utos/index.htm (last visited Oct. 10, 2016).

[10] *Available at* https://policies.yahoo.com/us/en/yahoo/privacy/index.htm (last visited Oct. 10, 2016).

13

54. The Privacy Policy, which is incorporated into the Yahoo Terms of Service, states that Yahoo will:

(a) "limit access to personal information about [users] to employees who [Yahoo] believe[s] reasonably need to come into contact with that information to provide products or services to [users] or in order to do their jobs"; and

(b) "have physical, electronic, and procedural safeguards that comply with federal regulations to protect personal information about [users]."

55. By becoming users of Yahoo's services, Plaintiff and other class members entered into a contractual relationship with Yahoo under the Yahoo Terms of Service and Privacy Policy.

56. Plaintiff and other class members have fully performed their obligations under the above agreements and documents.

57. Yahoo breached its obligations under the Yahoo Terms of Service and Privacy Policy by, among other things:

(a) failing to safeguard and protect the personal information of Plaintiff and other class members; and

(b) failing to provide timely and accurate notice to Plaintiff and other class members regarding the data breach.

58. As a direct and proximate result of Yahoo's breaches of the contracts, Plaintiff and other class members have actual losses and damages.

## Count IV
### Breach of the Implied Covenant of Good Faith and Fair Dealing

59. Plaintiff repeats and incorporates by reference each and every allegation set forth above, as though fully set forth herein.

60. There is a covenant of good faith and fair dealing implied in every contract and implied contract. This implied covenant requires each contracting party to refrain from doing anything to injure the right of the other to receive the benefits

of the agreement. To fulfill its covenant, a party must give at least as much consideration to the interests of the other party as it gives to its own interests.

61.    Under the implied covenant of good faith and fair dealing, Yahoo is obligated to, at a minimum, promptly and accurately notify Plaintiff and other class members of any unauthorized access to and theft of their personal information.

62.    Yahoo breached the implied covenant of good faith and fair dealing by, among other things, failing to timely investigate the 2014 data breach and to notify Plaintiff and other class members of the data breach in a timely manner.

63.    As a direct and proximate result of Yahoo's breaches of the implied covenant of good faith and fair dealing, Plaintiff and other class members have actual losses and damages.

### Count V
### Violation of California's Unfair Competition Law
### (CAL. BUS. & PROF. CODE § 17200, *et seq.*)

64.    Plaintiff repeats and incorporates by reference each and every allegation set forth above, as though fully set forth herein.

65.    Yahoo engaged in unfair, unlawful, and fraudulent business practices within the meaning of the Unfair Competition Law ("UCL"), CAL. BUS. & PROF. CODE § 17200, *et seq.*

66.    Yahoo collected and stored confidential, sensitive personal information from Plaintiff and other class members. Yahoo falsely represented to Plaintiff and other class members that:

(a)    "protecting [Yahoo's] systems and [Yahoo] users' information is paramount to ensuring Yahoo users enjoy a secure user experience and maintaining [their] trust";

(b)    Yahoo's databases were secure and adequate to keep confidential users' personal information;

(c)    Yahoo "limit[s] access to personal information about [users] to

Class Action Complaint
Demand for Jury Trial

employees who [Yahoo] believe[s] reasonably need to come into contact with that information to provide products or services to [users] or in order to do their jobs"; and

   (d)  Yahoo has "physical, electronic, and procedural safeguards that comply with federal regulations to protect personal information about [users]."

67.  In reliance on Yahoo's representations, Plaintiff and other class members obtained Yahoo accounts and provided Yahoo with confidential, sensitive personal information.

68.  In sum, Yahoo's misrepresentations and omissions caused Plaintiff and other class members to become Yahoo users and provide Yahoo with their confidential, sensitive personal information. Plaintiff and other class members would not have done so, but for Yahoo's misrepresentations and omissions.

69.  Yahoo's misrepresentations and omissions are unfair, unlawful, and fraudulent and are in violation of, *inter alia*, CAL. BUS. & PROF. CODE § 17200, *et seq.*, CAL. CIV. CODE § 1798.80, *et seq.*, and Yahoo's own Privacy Policy.

70.  In addition to making these misrepresentations and omissions, Yahoo also violated the UCL by failing to timely notify Plaintiff and other class members of the data breach and thus preventing them from taking the necessary measures to remedy the theft of their personal information and to take precautions against further data breaches.

71.  Plaintiff and other class members suffered injury in fact and lost money or property as the result of Yahoo's violations of the UCL.

72.  Plaintiff requests that Yahoo be (a) enjoined from further violations of the UCL; and (b) required to restore to Plaintiff and other class members any money it had acquired by unfair competition, including restitution and restitutionary disgorgement.

///

Class Action Complaint
Demand for Jury Trial

## COUNT VI
### Violation of California's Customer Records Act
#### (CAL. CIV. CODE § 1798.80, *et seq.*)

73.     Plaintiff repeats and incorporates by reference each and every allegation set forth above, as though fully set forth herein.

74.     Section 1798.82 of the California Civil Code provides, in pertinent part:

(a) Any person or business that conducts business in California, and that owns or licenses computerized data that includes personal information, shall disclose any breach of the security of the system following discovery or notification of the breach in the security of the data to any resident of California whose unencrypted personal information was, or is reasonably believed to have been, acquired by an unauthorized person. The disclosure shall be made in the most expedient time possible and without unreasonable delay, consistent with the legitimate needs of law enforcement, as provided in subdivision (c), or any measures necessary to determine the scope of the breach and restore the reasonable integrity of the data system.

(b) Any person or business that maintains computerized data that includes personal information that the person or business does not own shall notify the owner or licensee of the information of any breach of the security of the data immediately following discovery, if the personal information was, or is reasonably believed to have been, acquired by an unauthorized person.

(c) The notification required by this section may be delayed if a law enforcement agency determines that the notification will impede a criminal investigation. The notification required by this section shall be made after the law enforcement agency determines that it will not compromise the investigation.

(d) Any person or business that is required to issue a security breach notification pursuant to this section shall meet all of the following requirements:

(1) The security breach notification shall be written in plain language.

(2) The security breach notification shall include, at a minimum, the following information:

(A) The name and contact information of the reporting person or business subject to this section.

(B) A list of the types of personal information that were or are reasonably believed to have been the

17

subject of a breach.

(C) If the information is possible to determine at the time the notice is provided, then any of the following: (i) the date of the breach, (ii) the estimated date of the breach, or (iii) the date range within which the breach occurred. The notification shall also include the date of the notice.

(D) Whether notification was delayed as a result of a law enforcement investigation, if that information is possible to determine at the time the notice is provided.

(E) A general description of the breach incident, if that information is possible to determine at the time the notice is provided.

(F) The toll-free telephone numbers and addresses of the major credit reporting agencies if the breach exposed a social security number or a driver's license or California identification card number.

*       *       *

(f) Any person or business that is required to issue a security breach notification pursuant to this section to more than 500 California residents as a result of a single breach of the security system shall electronically submit a single sample copy of that security breach notification, excluding any personally identifiable information, to the Attorney General. A single sample copy of a security breach notification shall not be deemed to be within subdivision (f) of Section 6254 of the Government Code.

(g) For purposes of this section, "breach of the security of the system" means unauthorized acquisition of computerized data that compromises the security, confidentiality, or integrity of personal information maintained by the person or business. Good faith acquisition of personal information by an employee or agent of the person or business for the purposes of the person or business is not a breach of the security of the system, provided that the personal information is not used or subject to further unauthorized disclosure.

75.     The 2014 data breach set forth above constitutes a "breach of the security system" of Yahoo within the meaning of Section 1798.82.

76.     Yahoo unreasonably delayed informing anyone about the breach of security of the Subclass members' confidential and non-public information after

18

Yahoo knew the breach had occurred.

77.     Yahoo failed to disclose to the Subclass members, without unreasonable delay, and in the most expedient time possible, the breach of security of their unencrypted, or not properly and securely encrypted, personal information when Yahoo knew or reasonably believed such information had been compromised.

78.     Upon information and belief, no law enforcement agency instructed Yahoo that notification to Plaintiff or other class members would impede investigation.

79.     Pursuant to Section 1798.84:

> (a) Any waiver of a provision of this title is contrary to public policy and is void and unenforceable.

> (b) Any customer injured by a violation of this title may institute a civil action to recover damages.

> (c) In addition, for a willful, intentional, or reckless violation of Section 1798.83, a customer may recover a civil penalty not to exceed three thousand dollars ($3,000) per violation; otherwise, the customer may recover a civil penalty of up to five hundred dollars ($500) per violation for a violation of Section 1798.83.

> *       *       *

> (e) Any business that violates, proposes to violate, or has violated this title may be enjoined.

80.     As a result of Yahoo's violation of Section 1798.82, the Subclass members incurred damages relating to, *inter alia*, expenses for credit monitoring.

81.     Plaintiff Gary Hirt, on behalf of himself and the Subclass, seeks all remedies available under Section 1798.84 of the California Civil Code, including, but not limited to: (a) damages suffered by Plaintiff and the other class members as alleged above; (b) statutory damages for Yahoo's willful, intentional, and/or reckless violation of Section 1798.83; and (c) equitable relief.

82.     Plaintiff and the Subclass also seek reasonable attorneys' fees and costs under Section 1798.84(g) of the California Civil Code.

Class Action Complaint
Demand for Jury Trial

## COUNT VII
## Declaratory Relief

83.   Plaintiff repeats and incorporates by reference each and every allegation set forth above, as though fully set forth herein.

84.   There is an active case and controversy between Plaintiff and other class members on the one hand, and Yahoo on the other.

85.   Pursuant to 28 U.S.C. § 2201, Plaintiff seeks a declaration that, to the extent the claims asserted in this complaint are covered by the Yahoo Terms of Service, Section 20 of the Yahoo Terms of Service, purporting to limit Yahoo's liability for, *inter alia*, "unauthorized access to … [Plaintiff's and other class members'] data," is unenforceable because:

(a)   Section 20 is procedurally and substantively unconscionable;

(b)   Section 20 violates public policy; and

(c)   Section 20 violates Section 1668 of the California Civil Code and Section 2719 of the California Commercial Code.

86.   Plaintiff is in doubt as to whether the Yahoo Terms of Service apply to their claims and whether, if so, the limitation of liability clause therein is lawful and enforceable under California law.

87.   There is a *bona fide* dispute between the parties hereto, and Plaintiff has and does raise justiciable issues as to the existence or non-existence of his rights, powers, obligations, and legal relations with Yahoo by virtue of the Terms of Service, this complaint, and the applicable statutes and rules of this state.

88.   Plaintiff is in doubt as to his rights, powers, obligations, and legal relations and there is an actual and present need for a declaratory judgment as to the issues set forth above.

///

///

///

Class Action Complaint
Demand for Jury Trial

## VIII.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all similarly-situated members of the Classes, respectfully requests that this Court enter a judgment in favor of them and against Yahoo:

A.     certifying this action as a class action under Federal Rule of Civil Procedure 23, appointing Plaintiff as Class Representative, and appointing the undersigned counsel as Class Counsel;

B.     finding that Yahoo's conduct was negligent, deceptive, unfair, and unlawful as alleged herein;

C.     enjoining Yahoo from engaging in the negligent, deceptive, unfair, and unlawful business practices alleged herein;

D.     declaring that Section 20 of the Yahoo Terms of Service is unenforceable;

E.     awarding Plaintiff and the other class members actual, compensatory, and consequential damages;

F.     awarding Plaintiff and the other class members statutory damages;

G.      awarding Plaintiff and the other class members restitution and disgorgement;

H.     requiring Yahoo to provide appropriate credit-monitoring services to Plaintiff and the other class members;

I.     awarding Plaintiff and the other class members pre-judgment and post-judgment interest;

J.     awarding Plaintiff and the other class members reasonable attorneys' fees and costs, including expert witness fees; and

K.     granting such other relief as the Court deems just and proper.

///

///

Class Action Complaint
Demand for Jury Trial

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all issues so triable.

Dated:  October 12, 2016

Respectfully submitted,

BOTTINI & BOTTINI, INC.
Francis A. Bottini, Jr. (SBN 175783)
Albert Y. Chang (SBN 296065)
Yury A. Kolesnikov (SBN 271173)

_s/ Francis A. Bottini, Jr._
Francis A. Bottini, Jr.

7817 Ivanhoe Avenue, Suite 102
La Jolla, California 92037
Telephone:     (858) 914-2001
Facsimile:     (858) 914-2002
Email:         fbottini@bottinilaw.com
               achang@bottinilaw.com
               ykolesnikov@bottinilaw.com

_Attorneys for Plaintiff, Gary Hirt_

Class Action Complaint
Demand for Jury Trial